## Case No. 61,315.

UNITED STATES ex rel. REED v. SMALL-WOOD.

[1 Chi. Leg. News, 321; 2 Am. Law T. Rep. U. S. Cts. 109; 1 Leg. Gaz. 47.] [1]

District Court, D. Louisiana.  July, 1869.

POST OFFICE—PUBLICATION OF LIST OF LETTERS—MANDAMUS—WHEN MAY ISSUE FROM UNITED STATES COURT—JURISDICTION.

1. The Times, being the newspaper of the largest circulation in New Orleans, has a right to the printing, under government contract, of the weekly list of letters uncalled for at the New Orleans post office, and that it was the duty of the acting postmaster to send such list to that paper for publication.

2. Outside of the District of Columbia, the circuit courts of the United States cannot issue a writ of mandamus in the exercise of original jurisdiction, and such writs can be issued only as necessary to the jurisdiction of the court, and to enforce a judgment rendered.

[Cited in U. S. v. Pearson, 32 Fed. 310.]

3. In this case the court had not jurisdiction in the first instance by mandamus to compel the postmaster to furnish the letter list to The Times newspaper.

A. Walker, for plaintiff.
Semmes & Mott, for defendant.

DURELL, District Judge. The 18th section of the act of March 3, 1845 (5 Stat. 738), provides: "That all advertisements made under the orders of the postmaster general, in a newspaper or newspapers, of letters uncalled for in any post office, shall be inserted in the paper or papers of the town or place

1 [1 Leg. Gaz. 47, contains only a partial report.]

where the office advertising may be situated having the largest circulation: provided, the editor or editors of such paper or papers shall agree to insert the same for a price no greater than that now fixed by law; and in case of question or dispute as to the amount of circulation of any papers, the editors of which may desire this advertising, it shall be the duty of the postmaster to receive evidence and decide upon the fact." Prior to this enactment the patronage of the government, as far as the advertising of uncalled-for letters was concerned, was given to party papers, in many instances to papers which had not a tenth of the circulation secured to other papers published in the same town or city. The postal provision of section 18 of the act of 1845 was made to take this matter wholly out of the influence of politics; it was made looking solely to the public good. The act of 1863, § 7 (12 Stat. 702), provides: "That the postmaster general is hereby authorized to regulate the periods during which undelivered letters shall remain in any post office, and the times such letters shall be returned to the dead-letter office, and to make regulations for their return to the writers from the dead-letter office when he is satisfied they cannot be delivered to the parties addressed. He is authorized, also, to order the publication of the list of non-delivered letters at any post office, in his discretion, by writing, posted in any public place or places, or in any daily or weekly newspaper regularly published within the post office delivery; such list may be published in any daily newspaper of an adjoining delivery having the largest circulation within the delivery of the post office publishing the list, but in no case shall compensation for such publication be allowed at a rate exceeding one cent for each letter so advertised; and no such publication shall be required when the postmaster general shall decide that the public interest requires it: provided, that letters addressed to parties foreign born may be published in a journal of the language most used by the parties addressed, if such be published in the same or an adjoining delivery."

It will be seen that this act authorizes the postmaster general to order the publication of the list of non-delivered letters by writing, posted in a public place, or by print in the columns of a regularly published newspaper—in his discretion. But when the discretion is exercised, it must be a wise discretion; and, if publication through the columns of a newspaper be selected, the act of 1863 reiterates the provisions of the act of 1845, and enjoins that the non-delivered letters be published in a newspaper having the largest circulation within the delivery of the post office publishing the list. Undoubtedly the newspaper represented by C. A. Weed, being the paper of the largest circulation in the city of New Orleans, has a right to the printing under government contract of the weekly list of letters uncalled for at the New Orleans post office,

and it is the duty of Mr. Smallwood, acting postmaster, to send said list to that paper for publication. Smallwood, it appears, very well knows his duty under the law, for it is in evidence that in January last, he, acting for the government, awarded to The Times newspaper the making of the publication under consideration, for and during the time of one year. This publication he now hinders by withholding the weekly list of letters uncalled for, and Weed, representing the Times, applies for a writ of mandamus commanding Smallwood to do that which the law requires of him as an officer of the government to do. Can this court issue the writ in the exercise of an original jurisdiction? This question has been much mooted, both before the supreme and the circuit courts of the United States, and the decisions given thereupon are by no means harmonious. But the authority of Riggs v. Johnson Co., 6 Wall. [73 U. S.] 166, 1 L. T. Cts. Rep., where there was an application for the writ to the United States circuit court, sitting in Iowa, to compel certain county officers to levy a tax for the payment of the interest of certain railroad bonds issued by the county, is adverse to the exercise of any such power.

The decision given in the case of Riggs v. Johnson Co. [supra] is the last in point of time, rendered by the supreme court, touching the question under consideration, and with this court it is the law. The opinion was read by Mr. Justice Clifford as the organ of the court, and in the course of said opinion it is said: ."The second proposition of the defendants is that the fourteenth section of the judiciary act [1 Stat. 81], does not confer the power upon the federal courts to issue the writ to a state officer in any case. They argue that it does not authorize those courts to issue it at all, as it is not one of the writs named in the section, and is specially provided for, as appears in the preceding section. Nothing, however, is better settled than the rule that the circuit courts in the several states may issue the writ in all cases where it may be necessary, agreeably to the principles and usages of law, to the exercise of their respective jurisdictions. Such was the construction given to the fourteenth section of the judiciary act at the same time that the last clause of the preceding section, except as applied to judiciary officers, was held to be unconstitutional and void, and that construction has been followed to the present time. The authority of the circuit courts to issue process of any kind which is necessary to the exercise of jurisdiction and agreeable to the principles and usages of law is beyond question, and the power so conferred cannot be controlled either by the process of the state courts or by any act of the state legislature. Such an attempt was made in the early history of federal jurisprudence, but it was wholly unsuccessful. Suit in that case was ejectment, and the verdict was for the plaintiff.

Defeated in the circuit court, the defendant went into the state court and obtained an injunction staying all proceedings. Plaintiff applied for a writ of habere facias possessionem, but the judges of the circuit court being opposed in opinion whether the writ ought to issue, the point was certified to this court, and the decision was that the state court had no jurisdiction to enjoin a judgment of the circuit court, and the directions were that the writ of possession should issue. Prior decisions of the court had determined that a circuit court could not enjoin the proceedings in a state court, and any attempt of the kind is forbidden by an act of congress. The argument for the defendant is, that the rule established in those and kindred cases controls the present controversy, but the court is of a different opinion, for various reasons, in addition to those already mentioned. Unless it be held that the application of the plaintiff for the writ is a new suit, it is quite clear that the proposition is wholly untenable. Theory of the plaintiff is that the writ of mandamus, in a case like the present, is a writ in aid of jurisdiction which has previously attached, and that, in such cases, it is a process auxiliary to the judgment, and is the proper substitute for the ordinary process of execution, to enforce the payment of the same, as provided in the contract. Grant that such is the nature and character of the writ as applied in such a case, and it is clear that the proposition of the defendants must utterly fail, as in that view there can be no conflict of jurisdiction, because it has already appeared that a state court cannot enjoin the process or proceedings of a circuit court. Complete jurisdiction of the case, which resulted in the judgment, is conceded; and if it be true that the writ of mandamus is a remedy auxiliary to the judgment, and is the proper process to enforce the payment of the same, then there is an end of the argument. as it cannot be contended that a state court can enjoin any such process of a federal court. When issued by a federal court, the writ of mandamus is never a prerogative writ. Outside of this district no circuit court can issue it at all in the exercise of original jurisdiction. Power of the circuit courts in the several states to issue the writ of mandamus is confined exclusively to those cases in which it may be necessary to the exercise of their jurisdiction. Express determination of this court is, that it can only be issued by these courts in cases where the jurisdiction already exists, and not where it is to be acquired by means of the writ."

Thus it is decided by the supreme court that outside of the District of Columbia no circuit court can issue a writ of mandamus in the exercise of original jurisdiction. That such writs can be issued only as accessory to the jurisdiction of the court and to enforce a judgment rendered. Such being the law, and the writ demanded being, in fact, a

new suit, and not accessory to the jurisdiction of the court acquired in a previous suit, the motion is dismissed. The only remeuy is an action at law for damages.